**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**
Robert P. Lesko
Karen D. Peck
33 Washington Street
Newark, New Jersey 07102
Tel: (973) 624-0800
Fax: (973) 624-0808

*Local Counsel:*
**COOLEY MANION JONES LLP**
Jason A. Cincilla (#4232)
Amaryah K. Bocchino (#4879)
1105 North Market Street, Suite 200
Wilmington, DE 19801
Phone: (302) 657-2100
Fax: (302) 657-2104

*Attorneys for Movants,*
*American General Life Insurance Company*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY<br><br>Plaintiff,<br><br>vs.<br><br>STANLEY MANN, THE STANLEY MANN 2007 INSURANCE TRUST, CHRISTIANA BANK & TRUST CO., as Trustee, and JOHN DOES 1- 10,<br><br>Defendants. | Misc. No. _____<br><br>(Case Pending in the District of Delaware)<br>(Civil Action No: 1:09-cv-00434-GMS)<br><br>**CERTIFICATION OF KAREN D. PECK IN SUPPORT OF MOTION TO COMPEL RAVI DATTATREYA'S COMPLIANCE WITH SUBPOENA** |

Karen D. Peck, of full age, certifies that:

1.   I am an attorney at law duly authorized to practice before the United States District Court for the District of New Jersey. I am an associate with the law firm

1129319.1

1

of Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, counsel for Plaintiff, American General Life Insurance Company ("American General") in connection with this matter. In that capacity, I have personal knowledge of the facts and circumstances set forth herein, and I am authorized to make this certification in support of this Motion to Compel.

2. This certification is submitted in support of American General's motion for an order (a) compelling non-party Ravi Dattatreya to comply with the subpoena *duces tecum* and *ad testificandum* served upon him on January 27, 2011 (the "Subpoena"); and (b) granting such other and further relief the Court deems just and proper.

3. The Subpoena was issued in connection with an action pending in the United States District Court for the District of Delaware captioned *American General Life Ins. Co. v. Stanley Mann, The Stanley Mann 2007 Ins. Trust, Christiana Bank & Trust Company, as Trustee, and John Does 1-10*, Case No. 09-434-GMS.

4. In the underlying action, discovery conducted to date clearly supports the allegations in American General's Complaint and establishes that the named Defendants have employed a scheme to defraud and induce American General and other insurers to issue multimillion dollar life insurance policies insuring individuals with little or no assets for the benefit of investors who are strangers to the insured and have no insurable interest in their life. This scheme, commonly known as Stranger-Originated Life Insurance or STOLI, results in the issuance of unlawful wagering contracts that have been condemned by courts for centuries.

5. The objective of the STOLI scheme at issue in this case was to obtain from American General issuance of Flexible Premium Adjustable Life Policy

1129319.1

UM0027090L (hereinafter "the Policy") insuring the life of Stanley Mann ("Mann") in the amount of $3,500,000.00 for the benefit of the GIII Accumulation Trust ("GIII"). GIII's ultimate interest in the Policy was concealed from American General through the use of a multi-layer trust arrangement designed to look like a sophisticated estate planning model. The multi-layer trust arrangement and the procedure for implementing it is prescribed by GIII in the Amended and Restated GIII Origination Agreement (the "Origination Agreement").

6. The multi-layer arrangement prescribed by GIII includes an "insurance trust" in the name of the insured enlisted to participate in the scheme; in this case, the Stanley Mann 2007 Insurance Trust ("Insurance Trust"). The second layer trust is the "family trust," also in the name of the insured participant; in this case the Stanley Mann 2007 Family Trust ("Family Trust"). Consistent with the GIII prescription, the Insurance Trust includes a single, indivisible and transferable beneficial interest evidenced by a Certificate of Beneficial Interest and the Family Trust was identified as the sole initial owner of the Certificate of Beneficial Interest in the Insurance Trust. *See* Stanley Mann 2007 Insurance Trust, attached as Ex. A. The Origination Agreement also prescribes a "Restated Trust Agreement," such as the one executed in connection with the Insurance Trust in this case. *See* Deposition of Jose Mercado, P. 199:21-24, attached as Exhibit B.

**Ravi Dattareya's Role in the STOLI Scheme**

7. Ravi Dattatreya, the target of the Subpoena at issue, was an integral part of this fraudulent insurance scheme and the multi-layered trust arrangement currently before

3

1129319.1

this Court.  Specifically, Mr. Dattatreya is a representative of at least three, and possibly four, of the service providers which arranged and implemented the STOLI transaction.

8. Many of the service providers involved in this matter are connected and appear to be established, organized, and run by the same individuals.  To further complicate matters, the service providers frequently change names or "surrender authority" to another, related service provider.   This arrangement is intended to create confusion and to conceal the identities of the individuals who implemented the STOLI scheme.  This setup renders it extremely difficult to identify, locate, and serve the individuals ultimately responsible for the fraud.

9. Mr. Dattatreya is an employee or principal or representative of Cascade Financial Consultants ("Cascade").[1]  Cascade is a service provider that was involved with the transfer of the beneficial interest to the GIII Accumulation Trust. *See* Disbursement Instruction, attached as Exhibit C; Notice of Acceptance, attached as Exhibit D.

10. Cascade's integral role in the fraudulent scheme is evidenced by the fact that it is a party to Origination Agreement; the document which prescribes the multi-layer trust arrangement and the procedure for implementing it.  *See* Disbursement Instruction, attached as Exhibit C.

11. Cascade was formerly known as Radian Funding, LLC ("Radian"), which played a fundamental role in the origination of the STOLI transaction. *See* attached Waiver Notice, attached as Exhibit E.  Defendants the Stanley Mann 2007 Insurance Trust and Christiana Bank & Trust Company, as Trustee (collectively, "the Trust defendants") identified Radian as the entity which drafted the Stanley Mann 2007

---

[1] Cascade is an active entity (*See* NY Dept. of State Report, attached as Exhibit L).

4

Insurance Trust.  *See* Trust Defendants' amended answer to Interrogatory No. 19, propounded by American General, attached as Exhibit F.

12. Mr. Dattatreya is even further implicated in the fraud by virtue of his employment with Park Venture Advisors, LLC ("Park Venture").

13. Park Venture is the entity that "sold" the "program" under which insurance producers Stephen Wechsler and Kevin Bechtel sold the Policy.  Specifically, Park Venture arranged for the transfer of the beneficial interest in the Stanley Mann 2007 Insurance Trust.  *See* Stephen Wechsler dep. tr., attached as Ex. G at 143:24 – 144:4).  In this respect, Park Venture acted as a liaison between the Stanley Mann 2007 Insurance Trust and the Christiana Bank, as Trustee of the GIII Accumulation Trust.  *See* Kevin Bechtel dep. tr., attached as Exhibit H, at 239:25 – 240:3.   In fact, Jose Mercado, vice president of Wells Fargo Delaware Trust Company, Trustee of the GIII Accumulation Trust, identified Mr. Dattatreya as the most senior Park Venture employee he dealt with in connection with the transaction at issue.  *See* Jose Mercado dep. tr., attached as Exhibit B, at 53:22 – 54:13.

14. Furthermore, although the specifics remain unclear, American General believes there is a connection between Park Venture and Joseph Capital, LLC ("Joseph Capital") another service provider that facilitated the STOLI transaction.  It appears that known Park Venture principals, including Mr. Dattatreya, executed a document as representatives Joseph Capital.  *See* Registered Representatives Agreement, attached as Exhibit I.

15. It further appears that Joseph Capital and Park Venture are "employed by or associated as an independent contractor with Radian."  *See Id.* at pg. 1.

16. Therefore, Mr. Dattatreya, as representative of Cascade, Radian, and Park Venture, and possibly Joseph Capital, has personal knowledge of the STOLI transaction at issue.

**American General Encountered Great Difficulty in Locating and Serving the Service Providers and Mr. Dattatreya**

17. Based on Radian's close involvement in the underlying insurance transaction, American General first attempted to serve Radian with a subpoena for documents pursuant to Fed. R. Civ. P. 45. *See* attached Subpoena directed to Radian, dated October 1, 2010, attached hereto as Ex. J.

18. Results of an investigation performed by our private investigator revealed that Radian is affiliated with Park Venture Advisors LLC. Park Venture identifies Redstone LLC ("Redstone") c/o Landmark Banyan for DOS process, with and individual named Eshwar Das as Managing Partner. *See* service provider report, attached as Exhibit K. Therefore, on October 15, 2010, our private investigator served Eshwar Das with a subpoena directed to Radian, as well as a subpoena directed to Cascade.[2]

19. On or around December 2, 2010, counsel for Eshwar Das returned the subpoenas served upon his client, alleging that the subpoenas were mistakenly served upon Das.

20. Subsequent to American General's attempt to serve Radian via service on Eshwar Das, it gained additional information through discovery which revealed Mr. Dattatreya's role in connection with Radian/Cascade and Park Venture.

---

[2] Our private investigator's investigation further revealed that Helix Capital Funding ("Helix"), another service provider involved in the fraudulent transaction, had surrendered its authority to Redstone on 12/10/09. *See* New York department of state report, attached hereto as Ex. L. Therefore, our private investigator also served Eshwar Das with a subpoena directed to Helix, as well as a subpoena directed to Redstone.

6

1129319.1

21. Based on Mr. Dattatreya's close involvement in the underlying insurance transaction, American General attempted to serve Mr. Dattatreya with the attached Subpoena, dated November 12th ("the November 12th Subpoena"). *See* November 12th subpoena, attached hereto as Exhibit M.

22. The November 12th subpoena identified Mr. Dattatreya's address as 275 Central Park West, New York, NY, 10024-3015, which American General believed to be Mr. Dattatreya's residential address, based upon its investigation to date.

23. On or around November 17, 2010, upon attempting to serve Mr. Dattatreya at the 275 Central Park West address, our private investigator was advised by the building's doorman that Mr. Dattatreya had moved out of that building within the past week, but that Mr. Dattatreya still had working two landline telephone numbers listed to him at that location. Our investigator left voicemails at both numbers. Mr. Dattatreya failed to return our private investigator's calls.

24. Our private investigator's investigation revealed another possible residential address of 90 Park Avenue, 10th Floor, New York, NY for Mr. Dattatreya. His attempt to serve Mr. Dattatreya with the November 12th Subpoena at this address was also unsuccessful.

**American General Successfully Served Mr. Dattatreya on January 27, 2011**

25. Our private investigator's continuing efforts to determine Mr. Dattatreya's whereabouts ultimately revealed Mr. Dattatreya's current residential address of 19 Ridge Road, Summit, NJ.

26. American General made four attempts at personal service on Mr. Dattatreya. *See* affidavits of service, attached as Exhibit N. Mr. Dattareya was home for

7

1129319.1

*at least one* of these attempts, as our private investigator clearly heard Mr. Dattareya yell to the woman who answered the door, "Tell him I'm not here!" *See id*. As such, American General contends that Mr. Dattatreya was purposefully and knowingly evading personal service.

27. On January 27, 2011, following four unsuccessful attempts at personal service, our private investigator served Mr. Dattatreya with a subpoena ("the Subpoena") by affixing the subpoena to Mr. Dattatreya's door and by mailing a copy of the subpoena to Mr. Dattatreya via ordinary mail and via certified mail, return receipt requested. *See* Subpoena dated January 24, 2011, attached as Exhibit. O and affidavits of service, attached as Exhibit N.

28. Our private investigator subsequently received a return receipt, which appears to be executed by Mr. Dattatreya himself, evidencing Mr. Dattatreya's receipt of the subpoena via certified mail. *See* return receipt, attached as Exhibit P.

29. The Subpoena calls for production of documents in Mr. Dattatreya's possession, custody, or control relating to his role in the transaction. The Subpoena requested that the documents be produced by February 11, 2011.

30. The Subpoena further requested Mr. Dattatreya's deposition on February 18, 2011.

31. On February 10, 2011, counsel for American General received correspondence from Andre Castaybert, Esq., counsel for Mr. Dattatreya. Mr. Castaybert alleged that American General's service on Mr. Dattatreya failed to meet the requirements of Rule 45 due to the method of service, the timeframe of service, and

8

1129319.1

American General's failure to tender mileage fees simultaneously with service of the subpoena. *See* February 10th letter, attached as Exhibit Q.

32.  By letter dated February 10th, counsel for American General advised Mr. Castaybert that American General's service was proper pursuant to Rule 45. *See* February 14th letter, attached as Exhibit R.

33.  Mr. Castaybert replied by letter dated February 16, 2011, reiterating his objections to the propriety of service. *See* February 16th letter, attached as Exhibit S.

34.  On February 18, 2011, counsel for American General responded to Mr. Castaybert and provided ample legal authority to support the propriety of its service of the Subpoena on Mr. Dattatreya. American General also tendered the mileage fee in the amount of $13.26.[3] American General also requested that within three days, Castaybert provide with a date(s) on which Mr. Dattatreya can produce documents and appear for his deposition prior to March 4, 2011. *See* February 18 letter, attached as Exhibit T.

35.  Mr. Dattatreya still has not produced any responsive documents or appeared for his deposition in accordance with the Subpoena; nor has Mr. Castaybert provided a date(s) for production of documents or the deposition.

**American General's Service on Mr. Dattatreya Meets the Requirements of Rule 45**

36.  American General's service on Mr. Dattatreya via certified mail met the requirements of Rule 45. *See New Jersey Building Laborers Statewide Ben. Funds and Trustees Thereof v. Torchio Brothers, Inc.*, Civ. No. 08-552, 2009 U.S. Dist. LEXIS 10267, 2009 WL 368364 (D.N.J. Feb. 11, 2009)(finding certified mail delivery with signed proof of receipt meets the service requirement in Rule 45); *Jorden v. Glass,* 2010

---

[3] This amount represents the approximate 2011 standard mileage fee of $0.51 per mile for a distance of approximately 26 miles, which is the distance of the round trip between Mr. Dattatreya's home at 19 Ridge Road, Summit, NJ to Wilson Elser's Newark, NJ office (location of deposition, as noted on the subpoena).

U.S. Dist. LEXIS 74886 (D.N.J. July 23, 2010)(non-party witness was properly served via Certified Mail, Return Receipt Requested, where witness signed an acknowledgment of receipt of plaintiff's subpoena. Correspondence between witness and plaintiff's counsel further evidenced witness's receipt of the subpoena).

37. American General's service was also proper because Rule 45 incorporates procedures authorized under the applicable state law, and service of Mr. Dattatreya met the requirements of R.4:4-4(b)(1)(C), which permits service of a subpoena via certified mail and ordinary mail under New Jersey state law. *See Xstrata Can. Corp. v. Advanced Recycling Tech., Inc.*, 2010 U.S. Dist. LEXIS 118110, 6-7 (N.D.N.Y Nov. 5, 2010) (holding that service pursuant to New York C.P.L.R. was properly effectuated under Rule 45 where witness was unavailable for personal service); *see also King v. Crown Plastering Corp.*, 170 F.R.D. 355, 356 n.1 (E.D.N.Y. 1997) (any means of service in accordance with New York procedural law sufficient to satisfy Rule 45 requirements).

38. Moreover, courts have consistently held that where a witness has purposely evaded personal service, as is the case with Mr. Dattatreya, alternative service is permissible pursuant to Rule 45: "The Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service. Where the alternative service reasonably insures actual receipt of the subpoena by the witness, the delivery requirement of Fed. R. Civ. P. 45 is met." *Western Res., Inc. v. Union Pac. R.R.*, 2002 U.S. Dist. LEXIS 14897 (D. Kan. July 23, 2002)(where an expert witness purposefully evaded service of a subpoena, alternative service by service upon the expert's counsel and Federal Express, reasonably insured actual receipt of the subpoena by the expert, and the delivery requirement of Fed. R. Civ. P. 45 was met); *see*

10

*also United States ex rel. El-Amin v. George Washington Univ.*, 2000 U.S. Dist. LEXIS 15635 (D.D.C. Oct. 20, 2000)(where the court concluded that a non-party witness may have purposefully evaded personal service, the court permitted service by posting the subpoena where the witness resides, with a confirmatory copy sent by certified mail).

39. With regard to Mr. Dattatreya's objection to American General's failure to tender mileage fees, we note that the failure to tender such fees does not necessarily negate proper service of the subpoena for a deposition. *See, e.g., Klockner Namasco Holdings Corp. v. Daily Access.Com, Inc.*, 211 F.R.D. 685, 687 (N.D. Ga. 2002) (where party serving subpoena tendered mileage fees subsequent to service of the subpoena, the court noted that the late tender may justify compelling the witness to attend his deposition, subsequent to the tender).

40. Furthermore, any applicable mileage fees **only** relate to Mr. Dattatreya's appearance at the deposition, and American General's failure to tender such fees simultaneously with the Subpoena **does not excuse Mr. Dattatreya's obligation to comply with the subpoena to produce documents.** *See, e.g., Jackson v. Brinker*, 1992 U.S. Dist. LEXIS 19619 (S.D. Ind. 1992) ("Because a subpoena duces tecum does not command the attendance of the subpoenaed person, Rule 45(b)(1) does not require a tender of attendance or mileage fees in order to effect good service of such a subpoena . . ."); *Halawani v. Wolfenbarger*, 2008 U.S. Dist. LEXIS 100482 ( E.D. Mich. Dec. 10, 2008)(same); *Patrick Collins Inc. v. Doe*, 2010 U.S. Dist. LEXIS 138306 (N.D. Cal. Dec. 28, 2010)(granting plaintiff's Ex Parte Application for Leave to Take Limited Discovery, and ordering that, "because no appearance by a person at a deposition is required by the subpoena, instead only production of documents, records and the like is required, the

1129319.1

witness and mileage fees required by Rule 45(b)(1) of the Federal Rules of Civil Procedure do not apply and no such fees need be tendered").

**The Court Should Compel Mr. Dattatreya to Comply with Subpoena**

41.     "[I]it is well recognized that the Federal Rules allow for broad and liberal discovery." *Corning, Inc. v. SRU Biosys.*, LLC, 223 F.R.D. 191, 193 (D. Del. 2004). And, "[a] non-party witness is subject to the *same scope of discovery* under this rule as that person would be as a party to whom the request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45, Advisory Comm. Notes to 1970 Amendments, See also *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 21 (2nd Cir. 1998).  Under Fed. R. Civ. P. 45 (c)(2)(B)(i), a serving party may move to compel production of documents that a third party fails to produce.  In making its determination, the Court should consider the relevance and need for such information, the scope of the requests, the time period encompassed, and the burden imposed.  *See e.g. Gabe Station Motors, Inc. v. Volkswagen of Am. Inc.*, No. 99-5034, 2003 WL 25666135, at *2 (E.D. Pa. Feb. 28, 2003).  Here, the documents requested are highly relevant to American General's claim, they are narrowly tailored as to time and scope and there would be no burden on Dattatreya in producing the documents.

42.     An attorney, as an officer of the court, may issue a subpoena on behalf of the court in which the attorney is authorized to practice. Fed. R. Civ. P. 35(a)(e); *N.J. Bldg. Laborers Statewide Benefit Funds v. Torchio Bros.*, 2009 U.S. Dist. LEXIS 10267 (D.N.J. Feb. 11, 2009). A subpoena issued by an attorney as an officer of the Court, "serves as an enforceable mandate" from the Court on whose behalf they are served.  *See, e.g. Beruashvili v. Hobart Corp.*, 2006 U.S. Dist. LEXIS 55065 (E.D.N.Y. Aug. 8, 2006);

12

Advisory Committee Notes. The issuing court can hold a person in contempt for failure to comply with a subpoena. Fed. R. Civ. P. 45(e); *Pateley Assocs. LLC v. Pitney Bowes, Inc.*, 2009 U.S. Dist. LEXIS 113603 (D. Del. Dec. 4, 2009). Managing discovery, such as this motion to compel, rests is in the sound discretion of the trial court. *New York v. United States Metals Refining Co.*, 771 F.2d 796, 804 (3d Cir. N.J. 1985)("Rule 26 provides very broad discovery and gives the trial court wide discretion to manage the process").

43. Dattatreya may be deemed in contempt of the court because he has failed to provide timely written objections to the Subpoena.[4] *See In re Clients & Former Clients of Baron & Budd, P.C.*, 478 F.3d 670 (5th Cir. Tex. 2007) ("…Fed. R. Civ. P. 45(e) states that failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued"); *Tranchant v. Envtl. Monitoring Serv.*, 2001 U.S. Dist. LEXIS 16320 (E.D. La. Oct. 1, 2001) ("where a non-party has been properly served with a subpoena for a deposition, the non-party is required to either object to the subpoena or attend. If the non-party does neither, the non-party may be held in contempt"); *In re Barnicle*, 800 F. Supp. 1021 (D.N.H. 1992) ("Fed. R. Civ. P. 45(e) states that a failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. Evasion of a deposition subpoena constitutes an obstruction of the administration of justice.").

44. Mr. Dattatreya played an integral role in every step of this STOLI arrangement as a key principal of Cascade, Radian, Park Venture, and possibly Joseph

---

[4] We note that although counsel for Dattatreya "reserved his right" to object to the Subpoena in his correspondence of February 10th and February 16th, we have yet to receive formal written objections to the subpoena.

13

1129319.1

Capital.  Mr. Dattatreya was involved in this scheme from its inception by virtue of his role with Radian in drafting the Stanley Mann 2007 Insurance Trust.  Thus, the court should compel Mr. Dattatreya to comply with Subpoena by producing documents and appearing for his deposition.

WHEREFORE, American General respectfully requests an Order (a) compelling Ravi Dattatreya to promptly produce responsive documents and appear for deposition in accordance with the Subpoena; and (c) granting such other and further relief the Court deems just and proper.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: February 24, 2011

          *s/ Karen D. Peck*
          Karen D. Peck